**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br>W.J. BRADLEY MORTGAGE CAPITAL, LLC et al.,[1]<br>            Debtors. | Case No. 16-11049 (KG)<br>Chapter 7<br>(Jointly Administered)<br>Objection Deadline: August 22, 2016<br>(extended by agreement)<br>**RE: D.I. 96** |

**CHAPTER 7 TRUSTEE'S OBJECTION TO MOTION OF WJB LOAN LP FOR AN ORDER PROVIDING (I) THAT CERTAIN LOANS HELD BY DEBTOR W.J. BRADLEY MORTGAGE CAPITAL LLC AND ANY PROCEEDS THEREOF, ARE NOT PROPERTY OF THE ESTATE, (II) REQUIRING THE TRUSTEE TO TURN SUCH LOANS AND/OR PROCEEDS THEREOF OVER TO WJB LOAN LP AND (III) REQUIRING THE TRUSTEE TO PROVIDE AN ACCOUNTING FOR SUCH LOANS AND/OR PROCEEDS**

George L. Miller, the chapter 7 trustee (the "Chapter 7 Trustee") of the bankruptcy estates of the above-captioned debtors (the "Debtors"), by and through his undersigned counsel, hereby respectfully submits this objection to the motion of WJB Loan LP ("WJB Loan") for an order providing (I) that certain loans held by W.J. Bradley Mortgage Capital LLC and any proceeds thereof are not property of the estate, (II) requiring the Trustee to turn such loans and/or Proceeds thereof over to WJB Loan LP and (III) requiring the Trustee to provide an accounting for such loans and/or proceeds [D.I. 96] (the "Motion") and respectfully represents as follows:

**JURISDICTION AND VENUE**

1.    The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 an1334. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The Debtors and the last four digest of their respective tax identification numbers are: W.J. Bradley Company Merchant Partners 2003-Seed, LLC (4154); W.J. Bradley Mortgage Capital, LLC (0071); W.J. Bradley Corporate Services, LLC (7269); W.J. Financial Services, LLC (7292); WJB Mortgage Services, LLC (1514).

**PRELIMINARY STATEMENT**

2. This Motion short circuits the normal procedures where, like here, a party is seeking a declaratory judgment (i.e. formation of a constructive trust) and/or seeking the determination of a secured status. As set forth herein, it is particularly important to require that the Federal Rules of Bankruptcy Procedure ("FRBP") are followed as there are a number of factual and legal issues that appear to require a greater inquiry, including those regarding WJB Loan's claims or actions in this case.

3. The claims filed by WJB Loan relate to the Participation Agreement dated December 9, 2015 between WJB General Partner ("WJB GP"), W.J. Bradley Company Merchant Partners, LLC and MIMS Master Fund, LP ("MIMS"). Bradley Mortgage Capital, LLC and WJB Loan LP (the "Participation Agreement"). In the midst of the Debtors' liquidity crisis leading to the filing of these cases, as is the case with many of its contract counter-parties, the Debtors appear to have breached this agreement. As a result, WJB Loan is in a similar position as many of the estates creditors find themselves.

4. Considering that backdrop, it is clear that the motion by WJB Loan is an attempt to enhance and elevate their position vis a vis similarly situated creditors.

5. In so doing, WJB Loan is asking this Court to find, by way of motion, to award a greater priority and/or constructive trust rights that it did not have pre-petition. As a result, the relief sought herein is premature at this time, violates procedural constructs of the Federal Rules of Bankruptcy Procedure and appears to otherwise fail on the merits.

6. Finally, WJB Loan has all pre-petition information regarding the loans held for cash. There has been no transactions on these loans post-petition other than servicing thereof happening at the sub-servicer level, for which WJB Loan (and to an extent, this Court) knows the

Trustee has been seeking for at least two months. Asking the Court to force the Trustee to perform an accounting for WJB Loan's benefit, when the estate currently has no funds to perform such accounting is not a reasonable request, especially considering that WJB Loan had access to and received all information regarding the loans and proceeds up until the filing of the bankruptcy petitions.

7.     As a result, this Motion must be denied and, at a minimum, WJB Loan LP must be directed to comply with the procedural bounds of the Federal Rules of Bankruptcy Procedure should it continue to demand the questionable relief it seeks.

## BACKGROUND

8.     On April 28, 2016 (the "Petition Date"), the Debtors each filed voluntary petitions under Chapter 7 of the Bankruptcy Code.

9.     Prior to the Petition Date, on or about December 9, 2015, debtor WJ Bradley Mortgage Capital LLC entered into a Participation Agreement with WJB Loan LP[2] (the "Participation").

10.    Also prior to the Petition Date, among other parties, WJB Loan LP, MIMS and EF Holdco Inc. ("EFH")[3] entered into an Intercreditor Agreement also dated December 9, 2015 (the "Intercreditor Agreement").

11.    Although WJB Loan's Motion does not mention the Intercreditor Agreement at all, it is important to note that Section 1(b) of the Intercreditor Agreement states that MIMS (or its related parties), notwithstanding the provisions of any agreement between any of the parties to

---

[2] WJB Loan LP is owned, at least in part, by MIMS Master Fund, LP ("MIMS").
[3] At present, EF Holdco maintains that it holds a properly perfected first lien on all of the Debtors' assets. The Trustee reserves all rights to investigate and challenge that position as necessary and appropriate.

3

the Intercreditor Agreement, shall have no security interest in or claim against the assets of the "Debtors", including all accounts of the Debtors.

12. The Intercreditor Agreement also governs the relative interests of parties such as EFH, the Debtors and WJB Loan and in fact directs when WJB Loan may exercise its rights under the Participation Agreement.

13. Similarly, upon information and belief, sections 8.1 and 8.2 of the Intercreditor Agreement outline that MIMS and its affiliates may not take a security interest in the Debtors' property (other than in excluded collateral which does not apply here) until the indebtedness to EFH are paid in full.

14. Notwithstanding the foregoing, and the fact that EFH was not paid in full, MIMS, on behalf of WJB Loan filed UCC-1 financing statements in March, 2016, in an effort to perfect whatever secured interests it believes it had.

15. Also on March 17, 2016, WJB Loan, took steps to divest the Debtors from any rights it had under the Participation Agreement by submitting a notice to the Debtors wherein WJB Loan "terminated" the Debtors' rights to the participation. In so doing, WJB Loan also wrested the general partner role of the Participation away from the Debtors.

16. Debtors' records show as of March 2, 2016, the Debtors only maintained ten (10) loans held for cash. Debtors' records also show that WJB Loan was provided with investor reports regarding the Debtors' loan portfolio. In fact, WJB Loan is particularly familiar with the records having provided the list of "loans held for cash" and the loan numbers thereof still held by the Debtors estates to the Trustee (the "Identified Loans").

17. As of the Petition Date there are approximately five (5) remaining Identified Loans still held in the Debtors' possession. Although WJB Loan claims they all belong to WJB

Loan as a result of the actions taken above, of curious note, WJB Loan fails to provide any evidence of same. Under the Participation Agreement, each Participation was to be sold pursuant to a Purchase Confirmation which would identify the mortgage loan(s) subject to the transaction, none of which are attached to the motion. Importantly, it is believed that WJB Loan had all of the loan information (servicing, sales and proceeds thereof) and reporting data as of at least the Petition Date.

18. On June 7, 2016, the Court held a hearing on the Trustee's Motion to Compel Texas Capital Bank to turn over all funds and accounts in the name of the Debtors that it is holding. The hearing on that motion has been adjourned several times as the Trustee and Ginnie Mae have been working diligently on acquiring all of the relevant data in an effort to determine where the funds belong. WJB Loan is aware of this effort and has been provided relevant data from the limited information the Trustee has received to date.

19. Also relevant hereto, on June 8, 2016, the Trustee filed the Application of George L. Miller, the Chapter 7 Trustee, Pursuant to 11 U.S.C. §§ 327(e) & 328 for Authority to Employ and Retain Steven M. Coren, Esquire and Kaufman, Coren & Ress, P.C. as Special Counsel to the Chapter 7 Trustee, Nunc Pro Tunc, Effective as of July 6, 2016 to retain Steven Coren as special counsel to the Trustee (D.I. 83) (the "Coren Application"). The Coren retention is principally centered upon investigating the transactions taking place in the several months leading up to the Petition Date, including but not limited to, those funds used to facilitate a dubious member interest redemption by the Debtors.

20. Upon information and belief, at least $4 million provided by the principal participant in WJB Loans transactions, MIMS, were used by the Debtors to fund that member interest redemption. Further investigation regarding each entity's role, the use of funds and the

transactions are required but certainly these factors render the relief currently sought by WJB Loan at best, premature.

## SUMMARY OF ARGUMENT

21. This Court should not permit WJB Loan to jump ahead of other creditors of the estate, including one with an alleged blanket lien on all assets and competing claims against these same mortgage loans, especially before the facts and circumstances of the case are fully developed and vetted by the Trustee.

22. Along those lines, seeking declaratory relief in a short circuited fashion is both contrary to the Federal Rules of Bankruptcy Procedure and is plainly premature.[4]

23. For instance, seeking to form a constructive trust on funds that WJB Loan admittedly states it cannot trace is a questionable request at best.[5]

24. In addition, as WJB Loan acknowledges in its Motion, there are multiple parties asserting rights in the Debtors assets. Thus, absent a full record before the Bankruptcy Court, it is clear that there can be no determination at this time.

25. Furthermore, forcing the Trustee to expend funds to provide an accounting for the benefit of WJB Loan (with no real residual benefit to the estate) is not warranted or appropriate, especially where the estate is currently substantially illiquid.

---

[4] The representation made by WJB Loan that the Court permitted it seek a constructive trust and declaratory judgment by way of motion is an exaggerated departure from the June 7, 2016 colloquy when counsel for WJB Loan orally sought relief not before the Court and the Court, in dicta, advised counsel that it is entitle to file a pleading to seek the relief it was orally requesting. Whether the phrasing used by the Court was "a motion" it was clear that the Court was not advised that the relief would be the imposition of a constructive trust, determination of secured status, or respective priority rights. The casual comments of the Court cannot be used to neglect the appropriate procedural mechanisms for the relief WJB Loan is now seeking.

[5] The Trustee believes that at least one true intent behind this request is to use the Bankruptcy Court to hopefully make a finding of a constructive trust, albeit premature, in an effort to use that finding to support other claims it has such as under the Debtors' director and officers insurance policy. In that vein, it is clear that other parties in interest must be made a party to the declaratory relief sought so that those parties are not collaterally estopped from contesting the formation of a constructive trust.

## OBJECTION

### A.     The Relief Sought Herein Must Comply With the Federal Rules of Bankruptcy Procedure

26.    The proper procedural device to challenge the validity, priority, or extent of a lien or other interest in property, except a lien avoidance motion based up 11 U.S.C.S. § 522(f), is an adversarial proceeding rather than a motion. *See* Fed R. Bankr. P. 7001(2); *See In re Jablonski*, 70 B.R. 381, 384 (Bankr. E.D. Pa. 1987) and *In re Palombo Farms of Colorado, Inc*, 43 B.R. 709, 711 (Bankr. D. Colo. 1984). While objections to claims of secured status normally are contested matters that can be resolved in the main bankruptcy case, Federal Rule of Bankruptcy Procedure 7001(2) requires that certain contested matters—those "to determine the validity, priority or extent of a lien or other interest in property" – must be brought as an adversary. *See* Federal Rules of Bankruptcy Procedure 7001; *In re Johns Manville Corp.,* 53 B.R. 346, 352-355 (Bankr. S.D.N.Y. 1985)*; Scott v. Aegis Mortg. Corp.* (*In re Aegis Mortg. Corp.*), 2008 Bankr. LEXIS 1519, at *16 (U.S. Bankr. D. Del. May 22, 2008).

27.    The same analysis applies to the imposition of a constructive trust. Adversary proceedings must be commenced prior to the imposition of a constructive trust because the relief sought is a "proceeding to recover money or property," a proceeding to determine an "interest in property" or a proceeding to obtain "other equitable relief" pursuant to Bankruptcy Rule 7001(1), (2), or (7). *See In re K Chemical Corp.*, 188 B.R. 89, 98 (Bankr. D. Conn. 1995) (Action to impose constructive trust "must . . . be prosecuted as an adversary proceeding, with its attendant procedural formalities and safeguards as afforded by Part VII of Federal Rules of Bankruptcy Procedure").

28.    There can be no debate that the Federal Rules of Bankruptcy Procedure govern the relief sought here. It is not an issue of form over substance. The relief sought is directly

identified by the FRBP as one requiring the filing of an adversary proceeding. That is particularly important here as there are multiple parties who not only have an interest in the proceeds of the loans held for cash, but also were actors and/or witnesses in the December 9, 2015 transactions and perhaps other transactions.

29. The Trustee's special litigation counsel is investigating those transactions and WJB Loan's involvement in same. The Trustee should not be forced to complete its investigation in the normal fourteen day objection period of a motion.

30. As a result, the relief sought is both procedurally deficient and premature and therefore must be denied at this time.

    **B.**    <u>**Formation of A Constructive Trust is a Highly Specific Fact Inquiry**</u>

31. Similarly, the Motion is also troubling in that it seeks the imposition of a constructive trust over loans, assets or proceeds of the Debtors' estate. Yet, the Motion does not appear to provide the sufficient factual bases to meet the extraordinary standards that must be met in order for the imposition of same.

32. Because constructive trusts find their root in equity, courts only impose them where there is a finding that a party, against whom the trust is imposed, acquires property in a manner which creates an equitable duty in favor of the party seeking the constructive trust. *Brockway Pressed Metals, Inc. v. Eynon Assocs. (In re Brockway Pressed Metals, Inc.)*, 363 B.R. 431, 454 (Bankr. W.D. Pa. 2007).

33. The plaintiff bears the burden of establishing a constructive trust by evidence which is clear, precise, and unambiguous. *See* 38 P.L.E., supra, § 111 at 63. *See also In re Am. Int'l Airways, Inc.*, 44 B.R. 143, 144 (Bankr. E.D. Pa. 1984). The movant must overcome the presumption that that runs in favor of the Debtor, the legal title holder, that the desired property

belongs to the Debtor and are property included in its estate. *Id*. The imposition of a constructive trust should be left to the discretion of the trier of fact. *Watts v. Peachtree Tech. Partners, LLC (In re Palisades at W. Paces Imaging Ctr., LLC)*, Nos. 09-87600-WLH, 11-5183, 2011 Bankr. LEXIS 3576, at *15 (U.S. Bankr. N.D. Ga. Sep. 13, 2011).

34. The imposition of a constructive trust is governed by applicable state law. *State Hear Hosp. of Norristown v. Sacred Heart Hosp. of Norristown*, 175 B.R. 543, 544 (Bankr. E.D. Pa. 1994); *City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 1994 WL 636479 (3d Cir. 1994); *Goldberg v. New Jersey Lawyers' Fund*, 932 F.2d 273, 280 (3d Cir. 1991). The determination of whether a constructive trust applies is a question of state law. *Claybrook v. Consol. Foods, Inc. (In re Bake-Line Grp., LLC)*, 359 B.R. 566, 571 (Bankr. D. Del. 2007). Once a trust is determined to exist under state law, in a bankruptcy proceeding the effect of that finding is governed by federal law. *Brockway Pressed Metals, Inc. v. Eynon Assocs. (In re Brockway Pressed Metals, Inc.)*, 363 B.R. 431, 440 (Bankr. W.D. Pa. 2007).

35. A constructive trust is not really a trust at all. It is a legal fiction, a common law remedy imposed only by judicial action to require a defendant to relinquish property that represents an unjust enrichment. As a remedy, the trust does not exist until a plaintiff obtains a judicial decision "impressing" defendant's assets with a constructive trust. A party claiming entitlement to a constructive trust who does not have a pre-petition judicial decree creating one does not have an equitable interest in the debtor's property for purposes of § 541(d). *Id*. at 1451. *Secure Leverage Grp., Inc. v. Bodenstein (In re Peregrine Fin. Grp., Inc.)*, 487 B.R. 498, 514-15 (Bankr. N.D. Ill. 2013).

36. Here, WJB Loan's Motion does little more than state that the Debtors' breach of contract was improper and therefore the loans or proceeds should be held in trust for WJB Loan

9

because of the breach. In fact, certain of the documents attached to the Decalaration of Peter Harrison in support of the Motion actually highlight some of WJB Loan's improper actions during this timeframe, including violating the terms of the Participation Agreement and directly contacting the Debtors' employees and calling them "criminals".

37.    WJB's Motion could be denied on these grounds alone. However, should it really wish to present a case for constructive trust, it would seem that a full factual record would need to be developed for same.

38.    Curiously, albeit short of agreeing to a constructive trust, the Trustee had proposed and still offers to hold funds and not disburse absent further court order. It appears that the basic tenet of preservation of the assets and the status quo is not sufficient for WJB Loan's needs. WJB Loan wants the funds – to the extent they exist and are traceable (which WJB Loan knows are unlikely to trace), but more so, WJB Loan wants a constructive trust finding that it can use in another forum to bolster its positions against non-debtor parties (and/or their insurance policies).

39.    Thus, not only has WJB Loan failed to meet the highly specific factual burden here, it has failed to include into this proceeding the individuals being cited for the alleged wrongful acts that would give rise to the formation of a constructive trust.

40.    As a result, the procedural defects do not just impact the Trustee. They impact the creditors of the estate and the individuals that participated in the transactions that led to the Debtors' fall into Chapter 7.

    **C.**    **WJB Loan Does Not Have Fully A Secured and Perfected Interest in the Assets that it is Demanding to Take from the Estate**

41.    At the risk of repetitiveness, it is plain that WJB Loan's requests fall squarely in the realm of Rule 7001 et seq. of the FRBP. The relief sought in the Motion clearly requires a

Court finding that WJB Loan holds a priming lien on the loans held for cash and/or the proceeds thereof.

42. However, WJB Loan's alleged secured interests are in fact quite dubious and require a much more extensive review.

43. First, aside from the questionable ability to do so under the Intercreditor Agreement, WJB Loan only first attempted to perfect their liens with UCC-1 financing statements in March, 2016, only about a month prior to the Petition Date. This has clear preference implications.[6]

44. Moreover, it is unclear whether the MIMS transactions are in fact equity infusions into the partnership and/or the Debtors. This needs to be more fully investigated.

45. Along those lines, MIMS and its related parties need to be investigated for their participation in the December 2015 member redemption transaction which caused the Debtors to pay significant sums to redeem equity of dubious value that were rendered worthless in a matter of weeks.

46. In addition, EF Holdings purports to have a priming blanket lien on the Debtors assets and it is not clear from the Intercreditor Agreement whether MIMS and its related entities have any priming rights thereunder.

47. As a result, it is far from a foregone conclusion that MIMS and/or WJB Loan have a valid, priming security interest in the loans held for cash and/or the proceeds thereof.

48. Therefore the relief sought in WJB Loan's motion cannot be granted at this time, if ever.

---

[6] In footnote 8 of WJB Loan's Motion, there is reference to a security interest by operation of law. It is dubious in its own right, which is why UCC-1 financing statements were filed thereafter. Even so, it is possible that the MIMS related entities, as partners in the Participation Agreement are "insiders" and therefore further extends the preference period to one year prior to the bankruptcy petition.

**D.**     **Demand for Accounting / Documents**

49. Finally, WJB Loan asks this Court to compel the Trustee to perform an accounting of the Debtors' handling of the loans held for cash and to produce records that suit WJB Loan's needs.

50. As stated above, the Trustee has been attempting to recover relevant documents and is sharing those relevant documents with respective parties as they are received.

51. Moreover, the Chapter 7 estate is substantially illiquid and therefore does not currently have the funds to expend on this exercise, not to mention that it is dubious that any such accounting will have a benefit to the estate.

52. Upon information and belief, WJB Loan was provided with regular reporting on the loans held for cash at least through March 2016. There is not a major information gap that WJB Loan purports exists.[7]

53. Although WJB Loan suggests that the Chapter 7 Trustee is uncooperative and unwilling to shed light on the case, in fact, the Trustee, who has had his own difficulties recovering relevant data on other matters before the Court, has offered to WJB Loan access to the Debtors' records.

54. Requiring the Trustee to expend funds that it does not have for the purpose of benefitting solely WJB Loan is not an appropriate request and that too must be denied.

**(PAGE LEFT INTENTIONALLY BLANK)**

---

[7] Notably, the Chapter 7 Trustee has invited WJB Loan to the storage facility holding the Debtors' records for a supervised visit whereby WJB Loan would be able to copy relevant documents.

## **CONCLUSION**

WHEREFORE, the Chapter 7 Trustee respectfully requests that this Court deny the Motion of WJB Loan and grant such other and further relief as is just.

Dated:  August 22, 2016                                             GELLERT SCALI BUSENKELL & BROWN LLC

By:     */s/ Ronald S. Gellert*
             Ronald S. Gellert (DE 4259)
             1201 N. Orange Street, 3rd Floor
             Wilmington, DE 19801
             P:   302-425-5806
             F:   302-425-5814
             rgellert@gsbblaw.com

             *Counsel to Chapter 7 Trustee George Miller*