**<u>EXHIBIT B</u>**
**Participation Agreement**

## PARTICIPATION AGREEMENT

This PARTICIPATION AGREEMENT is made and entered into as of December 9, 2015 (the "Agreement"), between W.J. Bradley Mortgage Capital, LLC, a Delaware limited liability company ("Seller") and WJB Loan LP, a Delaware limited partnership ("Purchaser").

## RECITALS

In connection with that certain Second Amended and Restated Limited Partnership Agreement of WJB LOAN LP, dated as of December 9, 2015, by and among WJB General Partner, LLC, as general partner, MIMS Master Fund, L.P., as limited partner, and W.J. Bradley Company Merchant Partners, LLC (the "WJB LOAN LPA"), Seller has agreed to sell or assign to Purchaser, and Purchaser has agreed to purchase or accept from Seller, participations in all of Seller's right, title and interest in and to the related Qualifying Mortgage Loans (as defined below), in each case equal to the Participation Percentage and including all applicable warehouse credit facility obligations for which such mortgage loan packages serve as security and all of Seller's interest in any Related Agreements (as defined below) as identified in a Purchase Confirmation (as defined below) executed by Seller and Purchaser (each, a "Participation"). This Agreement is intended to set forth the terms and conditions by which Seller shall transfer and Purchaser shall acquire such Participations.

In consideration of the promises and mutual agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Seller and Purchaser agree as follows:

## ARTICLE I

## DEFINITIONS

Unless the context requires otherwise, all capitalized terms used herein shall have the meanings assigned to such terms in this Article I unless defined elsewhere herein.  Any capitalized term used or defined in a Purchase Confirmation that conflicts with the corresponding definition set forth herein shall supersede such term.  Any capitalized term not defined herein or in a Purchase Confirmation shall have the meaning given such term in the WJB LOAN LPA.

Accepted Practices:  The loan origination, administration and servicing practices to be observed by Seller in connection with Qualifying Mortgage Loans, which practices shall be conducted: (a) in a commercially reasonable manner and in good faith; (b) in accordance in all material respects with all Applicable Laws; (c) in accordance in all material respects with the policies, procedures, guidelines and other requirements of each Agency; and (d) in a manner consistent with customary and usual standards of practice of prudent originators, administrators and servicers of residential mortgage loans.

Agency:  Either Fannie Mae, Freddie Mac, FHA, VA or GNMA, as applicable.

Agreement:  This Participation Agreement, including all exhibits and supplements hereto, and all amendments hereof.

Applicable Law:  All applicable (1) federal, state, and local legal requirements (including statutes, rules, regulations, and ordinances), including but not limited to usury, truth-in-lending, real estate settlement, consumer credit, equal credit opportunity, fair housing, disclosure, anti-predatory or abusive lending, or unfair and deceptive acts and practices laws; (2) requirements and guidelines of each governmental agency, board, commission, instrumentality, and other governmental body or office having jurisdiction, including, without limitation, the CFPB; and (3) judicial and administrative judgments, orders, stipulations, awards, writs and injunctions.

Business Day:  Any day other than (i) a Saturday or Sunday, or (ii) a day on which banking and savings and loan institutions in the States of California or New York are authorized or obligated by law or executive order to be closed.

Closing:  The consummation of the transfer of each Mortgage Loan Package to Purchaser.

Closing Date:  The date on which the transfer to Purchaser of the Participations constituting a Mortgage Loan Package is consummated, as set forth in the Trade Confirmation and Purchase Confirmation.

Collateral Documents:  The collateral documents pertaining to each Qualifying Mortgage Loan as set forth in Exhibit A hereto.

Collateral File:  With respect to each Mortgage Loan, a file containing each of the Collateral Documents.

Custodial Account:  The account or accounts created and maintained in connection with servicing Qualifying Mortgage Loans pursuant to this Agreement.

Custodial Agreement:  The agreement governing the temporary retention of the Collateral File by the Custodian with respect to a Mortgage Loan Package.

Custodian:  Deutsche Bank National Trust Company, or its successor in interest or assigns, or such other custodian as may be agreed to by the parties for the related Mortgage Loan Package.

Cut-off Date:  The first day of the month in which the related Closing Date occurs or such other date as may be set forth in the related Trade Confirmation and/or Purchase Confirmation.

Cut-off Date Balance:  The aggregate scheduled unpaid principal balance of the Mortgage Loans in a Mortgage Loan Package as of the Cut-off Date, after application of (i) scheduled payments of principal due on such Mortgage Loans on or before such Cut-off Date, whether or not collected, and (ii) any Principal Prepayments received from the Mortgagor prior to the date on which the Mortgage Loan Schedule is prepared.

Determination Date:  The Business Day immediately preceding the related Remittance Date.

Due Date:  The day of the month on which the Monthly Payment is due on a Mortgage Loan, exclusive of any days of grace.

Due Period:  With respect to each Remittance Date, the period commencing on the second day of the month preceding the month of the Remittance Date and ending on the first day of the month of the Remittance Date.

Event of Default:  Any one of the conditions or circumstances enumerated in Section 7.01(a).

FHA:  The Federal Housing Administration or any successor thereto.

Fannie Mae:  The Federal National Mortgage Association or any successor organization.

Firm Commitment:  A current, valid, binding and enforceable commitment issued by an Investor in favor of Seller to purchase a specific Qualifying Mortgage Loan, which such commitment must be in form and substance satisfactory to Purchaser (including with respect to the purchase price percentage and amount to be paid for the purchase of the Mortgage Loan and the Investor delivery expiration date) or any Related Agreement for Qualifying Mortgage Loans which are to be securitized by an Issuer, including any forward sale of such resulting securities.

Freddie Mac:  The Federal Home Loan Mortgage Corporation or any successor organization.

GNMA:  The Government National Mortgage Association or any successor organization.

HUD:  The Department of Housing and Urban Development or any federal agency or official thereof which may from time to time succeed to the functions thereof.

Investor:  Any Person approved in advance by Purchaser, in its sole discretion, who agrees to purchase a Qualifying Mortgage Loan pursuant to a Firm Commitment.

Issuer:  Any Agency or any other issuer of a mortgaged-backed security, which Issuer (if other than an Agency) has been approved in advance by Purchaser to purchase Qualifying Mortgage Loans.

LPMI Fee:  The portion of the Mortgage Interest Rate relating to an LPMI Loan, which is set forth on the related Mortgage Loan Schedule, to be retained by Seller to pay the premium due on the PMI Policy with respect to such LPMI Loan.

LPMI Loan:  Any Mortgage Loan with respect to which Seller is responsible for paying the premium due on the related PMI Policy with the proceeds generated by the LPMI Fee relating to such Mortgage Loan, as set forth on the related Mortgage Loan Schedule.

MERS:  Mortgage Electronic Registration Systems, Inc. or any successor or assign thereto.

MERS Mortgage Loan:  Any Mortgage Loan registered with MERS on the MERS System.

MERS System:  The electronic system of recording transfers of mortgages maintained by MERS.

Monthly Payment:  The scheduled monthly payment on a Mortgage Loan as set forth in the related Mortgage Note.

Mortgage:  The mortgage, deed of trust or other instrument securing a Mortgage Note, which creates a lien on an unsubordinated estate in fee simple in real property securing the Mortgage Note or a lien upon a leasehold estate of the Mortgagor or shares allocated to a cooperative unit, as the case may be.

Mortgage Interest Rate:  The annual rate at which interest accrues on any Mortgage Loan in accordance with the provisions of the related Mortgage Note.

Mortgage Loan:  Any closed residential mortgage loan evidenced by a promissory note and secured by a first lien mortgage on a one to four family residence, including all Mortgage Rights relating thereto.  Unless the context requires otherwise, any reference to the Mortgage Loans in this Agreement shall refer to the Mortgage Loans constituting a Mortgage Loan Package.

Mortgage Loan Package:  The pool of Participations sold to Purchaser pursuant to a Purchase Confirmation.

Mortgage Loan Remittance Rate:  With respect to each Participation, the interest rate payable to Purchaser on each Remittance Date which shall equal the Mortgage Interest Rate on the related Qualifying Mortgage Loan less the LPMI Fee, if applicable, in each case subject to the Participation.

Mortgage Loan Schedule:  With respect to each Mortgage Loan Package, the schedule of Mortgage Loans included therein and made a part of the related Purchase Confirmation, which schedule shall include, the following information with respect to each Mortgage Loan: (i) information sufficient to uniquely identify such Mortgage Loan; (ii) the Mortgage Interest Rate as of the Cut-off Date; (iii) the loan-to-value at origination; (iv) the remaining term as of the Cut-off Date and the original term of such Mortgage Loan, and (vi) any other information pertaining to such Mortgage Loan as may be reasonably requested by Purchaser.

Mortgage Note:  The note or other evidence of the indebtedness of a Mortgagor secured by a Mortgage.

Mortgage Rights:  With respect to any Mortgage Loan, any and all of the following: (a) all rights to service such Mortgage Loan; (b) any payments or monies payable or received or

receivable with respect to such Mortgage Loan; (c) any late fees, prepayment fees, assumption fees, penalties or similar payments with respect to such Mortgage Loan; (d) all agreements or documents creating, defining or evidencing any rights with respect to such Mortgage Loan; (e) possession and use of any and all credit files pertaining to such Mortgage Loan or pertaining to the past, present or prospective servicing of such Mortgage Loan; (f) all accounts and other rights to payment related to any of the property described in this definition; and (g) all rights, powers and privileges incident to any of the foregoing.

Mortgaged Property:  The real property (or leasehold estate or cooperative shares, if applicable) securing repayment of the debt evidenced by a Mortgage Note.

Mortgagee:  The mortgagee or beneficiary named in the Mortgage and the successors and assigns of such mortgagee or beneficiary.

Mortgagor:  The obligor on a Mortgage Note.

Participation:  As defined in the Recitals hereto.

Participation Percentage:  As set forth in the Purchase Confirmation.

Person:  Any individual, corporation, limited liability company, partnership, joint venture, association, joint-stock company, trust, unincorporated organization or government or any agency or political subdivision thereof.

PMI Policy:  A policy of private mortgage guaranty insurance relating to a Mortgage Loan and issued by a Qualified Insurer.

Principal Prepayment:  Any payment or other recovery of principal on a Qualifying Mortgage Loan which is received in advance of its scheduled Due Date, excluding any prepayment penalty or premium thereon (unless the Purchase Confirmation provides otherwise), which is not accompanied by an amount of interest representing scheduled interest due on any date or dates in any month or months subsequent to the month of prepayment.

Purchase Confirmation:  A letter agreement, substantially in the form of Exhibit B hereto, executed by Seller and Purchaser in connection with the transfer of each Mortgage Loan Package to Purchaser, which sets forth the terms relating thereto including a description of the related Qualifying Mortgage Loans (including the Mortgage Loan Schedule), the purchase price for the related Qualifying Mortgage Loans, if applicable, and the related Closing Date.

Purchase Price:  The amount, if any, paid on the related Closing Date by Purchaser to Seller in exchange for the Mortgage Loan Package transferred on such Closing Date as set forth in the applicable Purchase Confirmation.

Purchaser:  The Person identified as the "Purchaser" in the preamble to this Agreement or its successor in interest or any successor or assign to Purchaser under this Agreement as herein provided.  Any reference to "Purchaser" as used herein shall be deemed to include any designee of Purchaser.

Qualified Insurer:  An insurance company duly qualified as such under the laws of the states in which the Mortgaged Properties are located, duly authorized and licensed in such states to transact the applicable insurance business and to write the insurance provided, which insurer is acceptable in such capacity by the applicable Agency.

Qualifying Mortgage Loan:  A Mortgage Loan: (a)(i) to be sold (and is eligible for sale) to an Issuer, (ii) for which Seller has received a Firm Commitment from an Investor, a copy of which Firm Commitment has been approved by Limited Partner and which is valid and enforceable in accordance with its terms, or (iii) such other Mortgage Loan specifically approved by the Limited Partner; (b) which is evidenced by a mortgage note, in form and substance acceptable to such Issuer or Investor, or the Limited Partner, payable to the order of Seller; (c) which is secured by a security instrument, in form and substance acceptable to such Issuer or Investor, or the Limited Partner; (d) which conforms in all respects with all the requirements of the Firm Commitment to purchase the same or all requirements of the Issuer to purchase the same or is otherwise acceptable to the Limited Partner; (e) for which the related Investment Acquisition Date is more than two (2) Business Days following the origination date of such Mortgage Loan; and (f) for which the Company or an Approved Custodian has received a complete mortgage file prior to the related Investment Acquisition Date.

Related Agreement:  With respect to any Participation, any hedge agreement, swap agreement, master repurchase agreement, side letter, custodial agreement or other agreement entered into by Seller and related to or otherwise affecting the related Qualifying Mortgage Loan (or the portion of any such agreement allocated to such Qualifying Mortgage Loan), which Related Agreement shall be approved by Purchaser in its sole discretion.

Remittance Date:  The tenth (10th) day of any month, beginning with the month next following the month in which the related Cut-off Date occurs, or if such tenth (10th) day is not a Business Day, the first Business Day immediately following.

REO Property:  A Mortgaged Property acquired by Seller on behalf of Purchaser pursuant to Accepted Practices.

Repurchase Price:  With respect to any Participation, a price equal to the sum of (a) the Purchase Price for Participation, and (b) the Participation's portion of interest on the Stated Principal Balance of the related Qualifying Mortgage Loan at the time of repurchase at the Mortgage Interest Rate from the last date through which interest has been paid and remitted to Purchaser to the date of repurchase.

Stated Principal Balance:  With respect to each Mortgage Loan as of any date of determination:  (i) the unpaid principal balance of the Mortgage Loan at the Cut-off Date after giving effect to payments of principal due on or before such date, whether or not received, *minus* (ii) all amounts previously remitted to Purchaser with respect to the related Mortgage Loan representing payments or recoveries of principal or advances in lieu thereof.

Trade Confirmation:  A letter agreement executed by Seller and Purchaser or a recorded verbal agreement together with a letter agreement sent by Seller to Purchaser by electronic mail or other medium prior to the applicable Closing Date confirming the terms of a prospective

Mortgage Loan Package or a security issued by an Agency collateralized by the Qualifying Mortgage Loans.

VA:  The Department of Veterans Affairs or any successor thereto.

## ARTICLE II

## CLOSING PROCEDURES

**Section 2.01    Collateral Files.**

(a)    All Collateral Files shall be held at the offices of the Custodian.  Seller shall, on or before one (1) Business Day prior to the related Closing Date, cause the Custodian to deliver to Purchaser, a Trust Receipt and collateral exception report identifying any deficiencies contained in the Collateral File for each Qualifying Mortgage Loan in the Mortgage Loan Package.

(b)    In the event that any of the Collateral Documents in the related Collateral Files are identified by the Custodian as not having been delivered to the Custodian (each, a "Missing Collateral Document"), then Seller shall have six (6) months from the related Closing Date to deliver to the Custodian such Missing Collateral Documents.  Notwithstanding the foregoing, Seller shall not be deemed to be in breach of this Agreement if its failure to deliver any Missing Collateral Document within the time specified above is due solely to (i) the failure of the applicable recorder's office to return a Missing Collateral Document that was sent for recording or (ii) the failure of the title insurer to issue and deliver the original mortgagee title policy, except where such refusal to issue the policy is based on a claim that the title insurer is under no obligation to issue such policy.

(c)    Seller shall forward to the Custodian in a timely manner any original documents evidencing an assumption, modification, consolidation or extension of any Qualifying Mortgage Loan entered into in accordance with this Agreement upon execution and, if applicable, recordation thereof.

(d)    Seller hereby authorizes Purchaser, at Seller's expense, to perform all acts which Purchaser deems appropriate to protect, preserve and realize upon the Qualifying Mortgage Loans, including, but not limited to, the right to take possession of and endorse and collect any checks, drafts, notes, acceptances or other instruments for the payment of moneys due under any mortgage insurance or with respect to any Mortgage Note, complete blanks in documents, transfer servicing (including, but not limited, to sending "good bye letters" to any Mortgagor) and execute assignments on behalf of Seller as its attorney in fact. This power of attorney is coupled with an interest and is irrevocable without Purchaser's consent.  In connection with such power of attorney, upon Purchaser's request Seller shall execute a long form power of attorney in form and substance similar to the form attached hereto as Exhibit C hereto.

**Section 2.02    Purchase Confirmation.**    Upon confirmation with Purchaser of a Mortgage Loan Package to be transferred to Purchaser, Seller shall prepare and deliver to

Purchaser for execution the related Purchase Confirmation, executed by an authorized signatory of Seller.

**Section 2.03   Closing.**   The Closing of each Mortgage Loan Package shall take place on the related Closing Date and shall be subject to the satisfaction of each of the following conditions, unless otherwise waived by the prejudiced party(ies):

(a)      All of the representations and warranties of Seller under this Agreement shall be true and correct in all respects as of the related Cut-off Date; and

(b)      Both parties shall have executed the related Purchase Confirmation.

**Section 2.04   Payment of the Purchase Price.**   Subject to the conditions set forth in Section 2.03, and in consideration for the Mortgage Loan Package to be purchased by Purchaser on the related Closing Date, to the extent set forth in the related Purchase Confirmation Purchaser shall pay to Seller on the related Closing Date the Purchase Price by wire transfer of immediately available funds to the account designated by Seller.

**Section 2.05   Entitlement to Payments on the Mortgage Loans.**   With respect to any Participation transferred to Purchaser hereunder, Purchaser shall be entitled to (a) all scheduled principal due after the related Cut-off Date (minus that portion of any such principal recovery which relates to the principal portion of Monthly Payments due on or prior to the Cut-off Date); and (b) all payments of interest on such Mortgage Loan net of interest at the LPMI Fee, if applicable (minus that portion of any such payment that is allocable to the period prior to the related Cut-off Date).

**Section 2.06   Payment of Costs and Expenses.**   Purchaser and Seller shall each bear its own costs and expenses in connection with the transfer of the Participations including any commissions due its sales personnel, the legal fees and expenses of its attorneys and any due diligence expenses.

# ARTICLE III

## REPRESENTATIONS AND WARRANTIES; REMEDIES FOR BREACH

**Section 3.01   Seller's Representations and Warranties.**   Seller represents and warrants to Purchaser that, as of the related Closing Date:

(a)      Organization and Standing.   Seller is duly organized, validly existing and in good standing under the laws of the jurisdiction in which it is organized and has all licenses necessary to carry on its business as now being conducted and either Seller or its subservicer is qualified, licensed and in good standing in each state where the Mortgaged Property is located if required to be so licensed or is exempt from such licensing requirement to ensure the subservicing of the Qualifying Mortgage Loan in accordance with the terms of this Agreement.

(b)      Due Authority.   Seller has the full power and authority to (i) to sell each Qualifying Mortgage Loan, (ii) sell, assign or transfer Participations in each Qualifying

Mortgage Loan and (iii) service each Qualifying Mortgage Loan, either through itself or its subservicer, in compliance with the Agreement.

(c)    No Conflict.    Neither the acquisition or origination of the Qualifying Mortgage Loans by Seller, the transfer of the Participations to Purchaser, the consummation of the transactions contemplated hereby, nor the fulfillment of or compliance with the terms and conditions of this Agreement, will conflict with or result in a breach of any of the terms, conditions or provisions of Seller's charter or by-laws or result in a material breach of any legal restriction or any material agreement or instrument to which Seller is now a party or by which it is bound, or constitute a material default or result in an acceleration under any of the foregoing, or result in the violation of any material law, rule, regulation, order, judgment or decree to which Seller or its property is subject.

(d)    Approved Seller.    Seller is an approved seller/servicer for FNMA and FHLMC in good standing and is a mortgagee approved by the Secretary of HUD.

(e)    No Pending Litigation.    There is no action, suit, proceeding, investigation or litigation pending or, to Seller's knowledge, threatened, which either in any one instance or in the aggregate, if determined adversely to Seller would materially and adversely affect the transfer of the Participations to Purchaser, the ability of Seller to service the Qualifying Mortgage Loans hereunder, either through itself or its subservicer, in accordance with the terms hereof, or Seller's ability to perform its other obligations under this Agreement.

(f)    No Consent Required.    No consent, approval, authorization or order of any court or governmental agency or body is required for the execution, delivery and performance by Seller, of or compliance by Seller with, this Agreement or the consummation of the transactions contemplated by this Agreement, or if required, such consent, approval, authorization or order has been obtained prior to the related Closing Date.

(g)    Good Title.    Immediately prior to the transfer and assignment of each Participation to Purchaser, Seller was the sole owner and holder of the related Qualifying Mortgage Loan, including all of Seller's interest in any Related Agreements, free and clear of any and all liens, pledges, charges or security interests of any nature except for liens securing debt outstanding under the Seller's warehouse finance facilities (which liens shall not exceed ninety nine percent (99%) the Stated Principal Balance of such Qualifying Mortgage Loan), liens for taxes and government assessments not yet past due and the rights of any hedge counterparty in connection with any hedge on such Qualifying Mortgage Loan. Seller has good, indefeasible and marketable title and has full right and authority to sell and assign the Participation in such Qualifying Mortgage Loan.

**Section 3.02   Representation and Warranty Regarding Salability.**  With respect to each Qualifying Mortgage Loan identified in the related Trade Confirmation as being salable to an Investor, Seller represents and warrants to Purchaser as of the related Closing Date that such Qualifying Mortgage Loan is saleable to such Investor at the price specified in the related Firm Commitment, and in compliance with all applicable Agency guidelines and Applicable Laws.

**Section 3.03   Remedies for Breach of Representations and Warranties.**

(a)   Notice of Breach.  The representations and warranties set forth in Sections 3.01 and 3.02 shall survive the transfer of the Participations to Purchaser notwithstanding any restrictive or qualified endorsement on any Mortgage Note or assignment of mortgage or the examination or failure to examine any Collateral Documents.  Upon discovery by either Seller or Purchaser of a breach of any of the foregoing representations and warranties that materially and adversely affects the value of one or more of the related Qualifying Mortgage Loans or the Participations therein (each, a "Defective Mortgage Loan"), the party discovering such breach shall give prompt written notice to the other (a "Breach Notice").

(b)   Cure.  Within thirty (30) days from any Breach Notice, Seller shall use its best efforts to cure such breach in all material respects, and, if such breach cannot be cured within such thirty (30) day period, Seller shall, at Purchaser's option, repurchase the Participation in such Defective Mortgage Loan at the Repurchase Price.

(c)   Repurchase.  Any repurchase of a Participation in a Defective Mortgage Loan(s) pursuant to the provisions of this Section 3.03 shall be accomplished by deposit in the Custodial Account of the amount of the Repurchase Price for remittance to Purchaser on the next scheduled Remittance Date, after deducting therefrom any amount received in respect of such repurchased Defective Mortgage Loan or Loans and being held in the Custodial Account for future remittance.  On or before the date of the repurchase, Purchaser shall promptly cooperate with Seller to arrange for the reassignment of the Participation in such Defective Mortgage Loan and the delivery to Seller of any documents held by Purchaser or its designee relating to such Defective Mortgage Loan or the Participation therein.

(d)   Indemnification.  In addition to its repurchase and cure obligations, Seller shall indemnify Purchaser and hold it harmless against any losses, damages, penalties, fines, forfeitures, reasonable and necessary legal fees and related costs, judgments, and other out-of-pocket costs and expenses resulting from a breach of Seller's representations and warranties contained in Sections 3.01 or 3.02 that materially and adversely affects the value of one or more of the Qualifying Mortgage Loans.

## ARTICLE IV

## ADMINISTRATION AND SERVICING OF MORTGAGE LOANS

**Section 4.01   Seller to Act as Subservicer.**  Seller will have the responsibility for the administration and subservicing of each Qualifying Mortgage Loan in which Purchaser has obtained a Participation until such Qualifying Mortgage Loan is sold to an Investor.  With respect to each Qualifying Mortgage Loan, Seller shall be responsible for the period from and after the transfer of the related Participation for the execution of all appropriate notices and all other acts necessary to protect Purchaser's interest in and to such Participation, as to the Participation in such Qualifying Mortgage Loan and for preserving all rights in and to said Qualifying Mortgage Loan and administering it in all respects consistent with Accepted Practices.

**Section 4.02   No Transfer of Servicing**.  Seller shall not assign this Agreement or the servicing obligations hereunder to any other entity without the prior written consent of Purchaser.  Notwithstanding the foregoing, Seller has the right to delegate its duties under the Agreement to a subservicer or contractor as it deems necessary.

## ARTICLE V

## PROVISIONS OF PAYMENTS AND REPORTS TO PURCHASER

**Section 5.01   Distributions.**  On each Remittance Date, Seller shall remit to Purchaser (a) all accrued Mortgage Loan Remittance Rate due to Purchaser on Qualifying Mortgage Loans subject to Participations owned by Purchaser as of the close of business on the preceding Determination Date (or such other date as may be agreed to by Seller and the Limited Partner), net of charges against or withdrawals from the Custodial Account consistent with Accepted Practices; minus (b) any amounts attributable to Monthly Payments collected but due on a Due Date or Dates subsequent to the preceding Determination Date.  It is understood that the remittance on the first Remittance Date is to include Mortgage Loan Remittance Rate collected after the Cut-off Date to such Determination Date exclusive of any portion thereof allocable to the period prior to the Cut-off Date.

**Section 5.02   Periodic Reports to Purchaser.**

(a)   <u>Monthly Reports</u>.  Not later than each Remittance Date, Seller shall furnish to Purchaser via any electronic medium a monthly report as specified in the related Purchase Confirmation or Trade Confirmation.

(b)   <u>Miscellaneous Reports</u>.  Upon the foreclosure sale of any Mortgaged Property or the acquisition thereof by Seller pursuant to a deed-in-lieu of foreclosure, Seller shall submit to Purchaser a liquidation report with respect to such Mortgaged Property, which report may be included with any other reports prepared by Seller and delivered to Purchaser pursuant to the terms and conditions of this Agreement.  With respect to any REO Property, and upon the request of Purchaser, Seller shall furnish to Purchaser a statement describing Seller's efforts during the previous month in connection with the sale of such REO Property, including any

rental of such REO Property incidental to the sale thereof and an operating statement. Seller shall also provide Purchaser with such information concerning the Mortgage Loans as is necessary for Purchaser to prepare its federal income tax return and as Purchaser may reasonably request from time to time to the extent such information is not already in the reports distributed to Purchaser. Purchaser agrees to pay for all reasonable out-of-pocket expenses incurred by Seller in connection with complying with any request made by Purchaser hereunder if such information is not customarily provided by Seller in the ordinary course of servicing mortgage loans similar to the Mortgage Loans.

**Section 5.03  Repurchase of Participation Interests**. If Seller sells or transfers any Qualifying Mortgage Loans subject to a Participation hereunder, Seller shall repurchase such Participation from Purchase at the Repurchase Price. Any such repurchase pursuant to the provisions of this Section 5.03 shall be accomplished by deposit in the Custodial Account of the amount of the Repurchase Price for remittance to Purchaser on the next scheduled Remittance Date. On or before the date of the repurchase, Purchaser shall promptly cooperate with Seller to arrange for the reassignment of such Participation and the delivery to Seller of any documents held by Purchaser or its designee relating to such Participation. Notwithstanding the foregoing, in lieu of remitting the Repurchase Price to the Purchaser, the Seller may reinvest such Repurchase Price in other Qualifying Mortgage Loans ("Substitute Loans"). To reinvest such Repurchase Price, the Seller must notify the Purchase and deliver a new Purchase Confirmation or Trade Confirmation relating to the Substitute Loans. Upon such reinvestment, this Agreement shall continue and be effective with respect to the Participation in the Substitute Loans. Any Repurchase Price not so reinvested shall be remitted to Purchaser.

## ARTICLE VI

## COVENANTS BY THE SELLER

**Section 6.01  Indemnification by Seller.** Seller shall indemnify Purchaser and hold it harmless against any and all claims, losses, damages, penalties, fines, forfeitures, reasonable and necessary attorneys' fees and related costs, judgments, and any other costs, fees and expenses that Purchaser may sustain due to Seller's breach of any representation, warranty, covenant or other obligation under to this Agreement.

**Section 6.02  Third Party Claims.** Seller and Purchaser shall immediately notify the other if a claim is made upon such party by a third party with respect to this Agreement or the Qualifying Mortgage Loans or any Participation interest therein. Upon the prior written consent of Purchaser, Seller shall assume the defense of any such claim and pay all expenses in connection therewith, including attorneys' fees, and promptly pay, discharge and satisfy any judgment or decree which may be entered against it or Purchaser in respect of such claim.

**Section 6.03  Good Title.** Until all Participations transferred to Purchaser hereunder are repurchased by Seller, Seller shall (a) be the sole owner and holder of the related Qualifying Mortgage Loan, including all Seller's interest in any Related Agreements, free and clear of any and all liens, pledges, charges or security interests of any nature except for liens securing debt outstanding under the Seller's warehouse finance facilities (which liens shall not exceed ninety nine percent (99%) the Stated Principal Balance of such Qualifying Mortgage Loan), liens for

taxes and government assessments not yet past due and the rights of any hedge counterparty in connection with any hedge on such Qualifying Mortgage Loan and (b) have good, indefeasible and marketable title and have full right and authority to sell and assign its interest in such Qualifying Mortgage Loan.

## ARTICLE VII

## TERMINATION OF SELLER AS SERVICER

### Section 7.01    Termination Due to an Event of Default.

(a)    Each of the following shall be an Event of Default by Seller if it shall occur and be continuing:

(i)    any failure by Seller to remit to Purchaser any payment required to be made under the terms of this Agreement which such failure continues unremedied for a period of two (2) Business Days after the date upon which written notice of such failure, requiring the same to be remedied, shall have been given to Seller by Purchaser; or

(ii)    any failure on the part of Seller to duly observe or perform in any material respect any of the covenants or agreements on the part of Seller set forth in this Agreement (other than remittance of payments as described in clause (i) above), if any, which continues unremedied for a period of thirty (30) days after the date on which written notice of such failure, requiring the same to be remedied, shall have been given to Seller by Purchaser; or

(iii)    a decree or order of a court or agency or supervisory authority having jurisdiction for the appointment of a conservator or receiver or liquidator in any insolvency, bankruptcy, readjustment of debt, marshaling of assets and liabilities or similar proceedings, or for the winding-up or liquidation of its affairs, shall have been entered against Seller and such decree or order shall have remained in force undischarged or unstayed for a period of sixty (60) days; or

(iv)    Seller shall consent to the appointment of a conservator or receiver or liquidator in any insolvency, bankruptcy, readjustment of debt, marshaling of assets and liabilities or similar proceedings of or relating to Seller or of or relating to all or substantially all of its property; or

(v)    Seller shall admit in writing its inability to pay its debts generally as they become due, file a petition to take advantage of any applicable insolvency or reorganization statute, make an assignment for the benefit of its creditors, or voluntarily suspend payment of its obligations.

(b)    In case one or more Events of Default by Seller shall occur and shall not have been remedied within the timeframe of any grace or cure period, Purchaser, by notice in writing to Seller may, in addition to whatever rights Purchaser may have at law or equity to damages, including injunctive relief and specific performance, do any of the following (or any combination thereof):  (i) terminate or "suspend" all the rights and obligations of Seller under this Agreement

and in and to the Qualifying Mortgage Loans and the proceeds thereof, or (ii) with respect to Participations where the related Qualifying Mortgage Loans are not subject to any applicable warehouse credit facility obligations for which such Qualifying Mortgage Loans serve as security (or other liens or restrictions that prevent Seller from granting a security interest in such Qualifying Mortgage Loans), foreclose upon the related Qualifying Mortgage Loans (including without limitation taking any actions necessary to effect such transfer pursuant to the power of attorney granted to Purchaser under this Agreement) in order to transfer all of Seller's right, title and interest in and to the related Qualifying Mortgage Loans to Purchaser.  On or after the receipt by Seller of such written notice, all rights, authority and power of Seller under this Agreement, whether with respect to the Qualifying Mortgage Loans subject to Participation interests hereunder (but solely with respect to Participations where the related Qualifying Mortgage Loans are not subject to any applicable warehouse credit facility obligations for which such Qualifying Mortgage Loans serve as security (or other liens or restrictions that prevent Seller from granting a security interest in such Qualifying Mortgage Loans)), as, the Participation interests in the Qualifying Mortgage Loans or otherwise, shall pass to and be vested in Purchaser.  Upon written request from Purchaser, Seller shall prepare, execute and deliver, any and all documents and other instruments and do or accomplish all other acts or things necessary or appropriate to effect the purposes of such notice of termination, whether to complete the transfer and endorsement or assignment of the Qualifying Mortgage Loans subject to the Participation interests hereunder and related documents, or otherwise, at Seller's sole expense. Seller agrees to cooperate with Purchaser in effecting the termination of Seller's responsibilities and rights hereunder, including the transfer to Purchaser, for administration by it, of all cash amounts which shall at the time be credited by Seller to the Custodial Account or thereafter received with respect to the Mortgage Loans.

(c)     Purchaser may waive any default by Seller in the performance of Seller's obligations hereunder and its consequences.  Upon any such waiver of a past default, such default shall cease to exist, and any Events of Default arising therefrom shall be deemed to have been remedied for every purpose of this Agreement.  No such waiver shall extend to any subsequent or other default or impair any right consequent thereto except to the extent expressly so waived.

**Section 7.02 Termination by Other Means**.   The respective obligations and responsibilities of Seller shall terminate with respect to any Mortgage Loan Package upon the first to occur of:  (a) the later of the final payment or other liquidation (or any advance with respect thereto) of the last Qualifying Mortgage Loan subject to the Participation hereunder or the disposition of all REO Property in such Mortgage Loan Package and the remittance of all funds due hereunder; (b) by mutual consent of Seller and Purchaser in writing; or (c) the repurchase by Seller of all outstanding Participations in Qualifying Mortgage Loans and REO Property in a Mortgage Loan Package at a price equal the related Repurchase Price.

# ARTICLE VIII

## MISCELLANEOUS

**Section 8.01  Notices**.   All demands, notices and communications required to be provided hereunder shall be in writing and shall be deemed to have been duly given if mailed, by registered or certified mail, postage prepaid, and return receipt requested, or, if by other means, when received by the other party at the address as follows:

If to Seller:

W.J. Bradley Mortgage Capital, LLC
6465 Greenwood Plaza Blvd., 5th Floor
Centennial, Colorado 80111

If to Purchaser:

WJB LOAN LP
c/o WJB General Partner, LLC
6465 Greenwood Plaza Blvd., 5th Floor
Centennial, Colorado 80111

or such other address as may hereafter be furnished to the other party by like notice.  Any such demand, notice or communication hereunder shall be deemed to have been received on the date delivered to or received at the premises of the addressee (as evidenced, in the case of registered or certified mail, by the date noted on the return receipt).

**Section 8.02  Security Interest.**   With respect to Participations where the related Qualifying Mortgage Loans are not subject to any applicable warehouse credit facility obligations for which such Qualifying Mortgage Loans serve as security (or other liens or restrictions that prvent Seller from granting a security interest in such Qualifying Mortgage Loans), as collateral security for Seller's obligations to Purchaser under this Agreement, Purchaser shall have a first priority security interest in the following with respect to each Qualifying Mortgage Loan in which Purchaser purchased a Participation from Seller, wherever the following is located and whether the following is now owned or existing or is owned, acquired, or arises hereafter, including acquisition by contract or by operation of Law (all terms used in this Section which are defined in the UCC shall have the meanings given to such terms in the UCC): (i) all right, title and interest of Seller in and to each Mortgage Note and Security Instrument; (ii) all right, title and interest of Seller in and to each Qualifying Mortgage Loan, guaranty, loan document, title policy, insurance policy, Firm Commitment, and any other right ancillary to or securing or relating to any Mortgage Note; (iii) all accounts and receivables of Seller arising out of or relating to any and all Qualifying Mortgage Loans; (iv) all general intangibles of Seller relating to or arising out of any and all Qualifying Mortgage Loans; (v) all of the rights of Seller to the payment of money, including tax refund and insurance proceeds, relating to any and all Qualifying Mortgage Loans or the real properties securing the same; (vi) all files, records, books, ledger cards (including computer programs, tapes and related electronic data processing software) and writings of Seller or in which it has an interest in any

-15-

way relating to any and all Qualifying Mortgage Loans; (vii) all other personal property of Seller of any kind or type whatsoever relating to any and all Qualifying Mortgage Loans; and (vii) all additions, substitutions, replacements, proceeds, interest, and products of each of the foregoing described in this Section.  For this purpose, this Agreement shall constitute a security agreement in accordance with the UCC, and Purchaser shall have all the rights of a secured creditor with respect to such security.

Section 8.03   **Exhibits.**  The Exhibits to this Agreement and each Trade Confirmation and Purchase Confirmation executed by Seller and Purchaser are hereby incorporated and made a part hereof and are an integral part of this Agreement.

Section 8.04   **General Interpretive Principles.**  For purposes of this Agreement, except as otherwise expressly provided or unless the context otherwise requires:

(a)    the terms defined in this Agreement have the meanings assigned to them in this Agreement and include the plural as well as the singular, and the use of any gender herein shall be deemed to include the other gender;

(b)    accounting terms not otherwise defined herein have the meanings assigned to them in accordance with generally accepted accounting principles;

(c)    references herein to "Articles," "Sections," "Subsections," "Paragraphs," and other Subdivisions without reference to a document are to designated Articles, Sections, Subsections, Paragraphs and other subdivisions of this Agreement;

(d)    reference to a Subsection without further reference to a Section is a reference to such Subsection as contained in the same Section in which the reference appears, and this rule shall also apply to Paragraphs and other subdivisions;

(e)    the words "herein," "hereof," "hereunder" and other words of similar import refer to this Agreement as a whole and not to any particular provision;

(f)    the term "include" or "including" shall mean without limitation by reason of enumeration; and

(g)    reference to this Agreement or the Related Agreements or any other document referenced herein shall include all exhibits, schedules or other supplements thereto.

Section 8.05  **Reproduction of Documents.**    This Agreement and all documents relating thereto, including (a) consents, waivers and modifications which may hereafter be executed, (b) documents received by any party at the closing, and (c) financial statements, certificates and other information previously or hereafter furnished, may be reproduced by any photographic, photostatic, microfilm, micro-card, miniature photographic or other similar process.  The parties agree that any such reproduction shall be admissible in evidence as the original itself in any judicial or administrative proceeding, whether or not the original is in existence and whether or not such reproduction was made by a party in the regular course of

business, and that any enlargement, facsimile or further reproduction of such reproduction shall likewise be admissible in evidence.

**Section 8.06   Further Agreements.**  Seller shall execute and deliver to Purchaser and Purchaser shall be required to execute and deliver to Seller such reasonable and appropriate additional documents, instruments or agreements as may be necessary or appropriate to effectuate the purposes of this Agreement.

**Section 8.07   Conflicts between Transaction Documents.**  In the event of any conflict, inconsistency or ambiguity between the terms and conditions of this Agreement and either the related Trade Confirmation or related Purchase Confirmation, the terms of the related Trade Confirmation or related Purchase Confirmation, as the case may be, shall control.  In the event of any conflict, inconsistency or ambiguity between the terms and conditions of the related Trade Confirmation and the related Purchase Confirmation, the terms of the related Purchase Confirmation shall control.

**Section 8.08   Governing Law.**  This Agreement shall be governed by and construed in accordance with the laws of the State of California.  This Agreement shall be construed in accordance with the laws of the State of California and the obligations, rights and remedies of the parties hereunder shall be determined in accordance with the laws of the State of California, without regard to principles of conflicts of law.  The parties consent to the exclusive jurisdiction of the following courts in connection with any dispute between the parties arising from or in connection with this Agreement (i) United States District Court for the Central District of California; and (ii) any Superior Court of California County of Los Angeles.  The parties hereby irrevocably waive any objection to venue of any action between the parties in the courts described herein, whether pursuant to the doctrine of *forum non conveniens* or otherwise.  EACH PARTY HERETO HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT THAT IT MAY HAVE TO TRIAL BY JURY OF ANY CLAIM OR CAUSE OF ACTION, OR IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY BASED UPON OR ARISING OUT OF THIS AGREEMENT, RELATED TRADE CONFIRMATION OR RELATED PURCHASE CONFIRMATION (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY).

**Section 8.10   Severability Clause.**  Any part, provision, representation or warranty of this Agreement which is prohibited or which is held to be void or unenforceable shall be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof.  Any part, provision, representation or warranty of this Agreement which is prohibited or unenforceable or is held to be void or unenforceable in any jurisdiction shall be ineffective, as to such jurisdiction, to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction as to any Mortgage Loan shall not invalidate or render unenforceable such provision in any other jurisdiction.  To the extent permitted by applicable law, the parties hereto waive any provision of law which prohibits or renders void or unenforceable any provision hereof.  If the invalidity of any part, provision, representation or warranty of this Agreement shall deprive any party of the economic benefit intended to be

conferred by this Agreement, the parties shall negotiate, in good-faith, to an amendment to this Agreement which places each party in the same or as economic position as each party would have been in except for such invalidity.

**Section 8.11   Successors and Assigns.**   This Agreement shall bind and inure to the benefit of and be enforceable by Seller and Purchaser and the respective permitted successors and assigns of Seller and Purchaser.

**Section 8.12   Confidentiality.**   Neither Purchaser nor Seller shall, without the prior written consent of the other, disclose to any third party any information regarding this Agreement or the transactions contemplated herein, except to the extent that such disclosure is (i) required to effect the transactions contemplated herein or to enforce rights or defend obligations hereunder, (ii) required by law, court order or regulation, or (iii) necessary to permit the audit of the accounts of a party hereto.

**Section 8.13   Entire Agreement.**   This Agreement and the related Trade Confirmation and related Purchase Confirmation constitute the entire understanding between the parties hereto with respect to each Mortgage Loan Package and supersede all prior or contemporaneous oral or written communications regarding same.   Seller and Purchaser understand and agree that no employee, agent or other representative of Seller or Purchaser has any authority to bind such party with regard to any statement, representation, warranty or other expression unless said statement, representation, warranty or other expression is specifically included within the express terms of this Agreement or the related Trade Confirmation or related Purchase Confirmation. Neither this Agreement nor the related Trade Confirmation nor the related Purchase Confirmation shall be modified, amended or in any way altered except by an instrument in writing signed by both parties.

**Section 8.14   Execution of Agreement.**   For the purpose of facilitating the execution of this Agreement, this Agreement may be executed simultaneously in any number of counterparts, each of which counterpart shall be deemed to be an original and all of which shall constitute one and the same instrument.   Telecopy signatures shall be deemed valid and binding to the same extent as the original.

*(SIGNATURE PAGE TO FOLLOW)*

IN WITNESS WHEREOF, Seller and Purchaser have caused their names to be signed hereto by their respective officers thereunto duly authorized as of the date first above written.

SELLER:

**W.J. BRADLEY MORTGAGE CAPITAL, LLC**

By: _____
Name:  William J. Bradley
Title:   Chief Executive Officer and President


PURCHASER:

**WJB LOAN LP**

By: WJB GENERAL PARTNER, LLC,
        its General Partner

            By: W.J. BRADLEY MORTGAGE CAPITAL, LLC,
                its Managing Member

By: _____
Name:  William J. Bradley
Title:   Chief Executive Officer and President

*Signature Page to*
*Participation Agreement*

## EXHIBIT A

## COLLATERAL DOCUMENTS

1.    Mortgage Note:  The original Mortgage Note (or a lost note affidavit in a form acceptable to an Agency) bearing all intervening endorsements, endorsed "Pay to the order of_____, without recourse" and signed in the name of Seller or its nominee by an authorized officer.

2.    Guarantee:  If any, the original of any guarantee executed in connection with the Mortgage Note or a true and correct electronic copy thereof.

3.    Mortgage:  The original Mortgage with evidence of recording thereon or a true and correct electronic copy thereof, or, if such original Mortgage has not been returned to Seller on or prior to the related Closing Date by the public recording office where such Mortgage has been delivered for recordation, a copy of such Mortgage certified by Seller, the originator, the escrow agent, the title insurer or the closing attorney to be a true and complete copy of the original Mortgage sent for recordation.

4.    Modifications:  The originals of all assumption, modification, consolidation or extension agreements, with evidence of recording thereon, if any, or a true and correct electronic copy thereof.

5.    Intervening Assignments:  The originals of all intervening assignments of Mortgage with evidence of recording thereon, provided that such originals have been returned to Seller by the public recording office where such intervening assignment of Mortgage has been delivered for recordation, or a true and correct electronic copy thereof.

6.    Title Policy:  Unless otherwise permitted by Seller's underwriting guidelines, (i) the original mortgagee title insurance policy or a true and correct electronic copy thereof, or if the original mortgagee title insurance policy was provided electronically, proof of such mortgagee title insurance policy shall be provided by Seller upon receipt of written request for such mortgagee title insurance policy from Purchaser, or (ii) if the related Mortgaged Property is located in a jurisdiction where such title insurance is not customarily provided, Seller shall provide documentation customarily provided in lieu of such mortgagee title insurance policy, in each and every case, only if such title insurance policy has been issued by the related title company on or prior to the related Closing Date.

7.    Loan Guaranty Certificate:  If applicable, the original Loan Guaranty Certificate, if any, or a true and correct electronic copy thereof, or commercially acceptable proof thereof.

8.    Mortgage Insurance Certificate:  If applicable, the original Mortgage Insurance Certificate, if any, or a true and correct electronic copy thereof, or commercially acceptable proof thereof.

**EXHIBIT B**

**FORM OF PURCHASE CONFIRMATION**

December 9, 2015

**WJB Loan LP**
**c/o WJB General Partner, LLC**
**6465 Greenwood Plaza Blvd., 5th Floor**
**Centennial, Colorado 80111**

      Re:  Purchase Confirmation

Ladies and Gentlemen:

      This purchase confirmation (the "Purchase Confirmation") between W.J. BRADLEY MORTGAGE CAPITAL, LLC (the "Seller") and WJB LOAN LP (the "Purchaser") sets forth our agreement pursuant to which Seller is selling or assigning, and Purchaser is purchasing or accepting, Participations in those certain mortgage loans identified in Schedule A hereto and more particularly described herein (the "Qualifying Mortgage Loans").

      The transfer of the Participations, and servicing of the Qualifying Mortgage Loans as contemplated herein shall be governed by that certain Participation Agreement, dated as of December 9, 2015, between Seller and Purchaser (as amended herein and otherwise, the "Agreement").  By executing this Purchase Confirmation, each of Seller and Purchaser again makes, with respect to itself and each Participation and Mortgage Loan subject thereto, as applicable, all of the covenants, representations and warranties made by each such party in the Agreement, except as the same may be amended by this Purchase Confirmation.

      All exhibits hereto are incorporated herein in their entirety.  In the event there exists any inconsistency between the Agreement and this Purchase Confirmation, this Purchase Confirmation shall be controlling notwithstanding anything contained in the Agreement to the contrary.  All capitalized terms used herein and not otherwise defined herein shall have the meanings assigned to such terms in the Agreement.

      1.  Defined Terms.  As used in the Agreement, the following defined terms shall have meanings set forth below.

      a.      Participation Percentage:  See attached Schedule a.

      b.      Closing Date:  December 9, 2015.

      c.      Custodian:  See attached Schedule A.

      d.      Index:  See attached Schedule A.

      e.      Missing Credit Documents:  None.

      f.      Purchase Price:  See attached Schedule A.

Exhibit B-1

g.      Loan Type:     See attached Schedule A.

h.      Lien Position:  Each Mortgage Loan is secured by a perfected first lien Mortgage.

i.      Servicer Reporting Type:  See attached Schedule A.

Kindly acknowledge your agreement to the terms of this Purchase Confirmation by signing in the appropriate space below and returning this Purchase Confirmation to the undersigned.

Confirmed and agreed:


**W.J. BRADLEY MORTGAGE CAPITAL, LLC**


By:_____
Name:
Title:


Agreed and Accepted:

**WJB LOAN LP**

By:     W.J. BRADLEY MORTGAGE CAPITAL, LLC,
        its General Partner


By:_____
Name:
Title:

**Schedule A**

**to**

**Purchase Confirmation**

(attached)

SMRH:224398300.2

Exhibit B-3

**EXHIBIT C**

**FORM OF POWER OF ATTORNEY**

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:
WJB LOAN LP
c/o WJB General Partner, LLC
6465 Greenwood Plaza Blvd., 5th floor
Centennial, Colorado 80111
Attn:  William J. Bradley

LIMITED POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS, that W.J. Bradley Mortgage Capital, LLC, a limited liability company organized and existing under the laws of the State of Delaware and having its principal place of business at 6465 Greenwood Plaza Blvd., 5th Floor, Centennial, Colorado 80111, as the originator/seller (the "Seller") pursuant to that certain Participation Agreement, between WJB LOAN LP (the "Owner") and Seller, dated as of December 9, 2015 (the "Agreement"), hereby constitutes and appoints the Owner, by and through the Owner's officers, Seller's true and lawful Attorney-in-Fact, in Seller's name, place and stead in connection with all Mortgage Loans and REO properties participated by Seller to Owner under the Agreement for the limited purpose of performing all acts and executing all documents in the name of Seller as may be customarily and reasonably necessary and appropriate to effectuate any transactions relating to the Mortgage Loans and Participations subject hereto, including but not limited to those enumerated below, in respect of any of the mortgages or deeds of trust (the "Mortgages" and the "Deeds of Trust" respectively) and promissory notes secured thereby (the "Mortgage Notes") in the event Seller is named therein as mortgagee or beneficiary and the Owner has, notwithstanding its status as mortgagee by virtue of endorsement of the Mortgage Note secured by any such Mortgage or Deed of Trust, not yet become the mortgagee or beneficiary of record.

This appointment shall include without limitation the following transactions:

1.      The modification or re-recording of a Mortgage or Deed of Trust, where said modification or re recording is for the purpose of correcting the Mortgage or Deed of Trust to conform same to the original intent of the parties thereto or to correct title errors discovered after such title insurance was issued

2.      The subordination of the lien of a Mortgage or Deed of Trust to an easement in favor of a public utility company of a United States governmental agency or unit with powers of eminent domain; this section shall include, without limitation, the execution of partial satisfactions/releases, partial reconveyances or the execution or requests to trustees to accomplish same.

3.      The conveyance of the properties to the mortgage insurer, or the closing of the title to the property to be acquired as real estate owned, or conveyance of title to real estate owned.

SMRH:224398300.2

Exhibit C-1

4.      The completion of loan assumption agreements.

5.      The full satisfaction/release of a Mortgage or Deed of Trust or full conveyance upon payment and discharge of all sums secured thereby, including, without limitation, cancellation of the related Mortgage Note.

6.      The assignment of any Mortgage or Deed of Trust and the related Mortgage Note, in connection with the purchase of the mortgage loan secured and evidenced thereby.

7.      The full assignment of a Mortgage or Deed of Trust upon payment and discharge of all sums secured thereby in conjunction with the refinancing thereof, including, without limitation, the assignment of the related Mortgage Note.

8.      With respect to a Mortgage or Deed of Trust, the foreclosure, the taking of a deed in lieu of foreclosure, or the completion of judicial or non-judicial foreclosure or termination, cancellation or rescission of any such foreclosure, including, without limitation, any and all of the following acts:

        a.      the substitution of trustee(s) serving under a Deed of Trust, in accordance with state law and the Deed of Trust;

        b.      the preparation and issuance of statements of breach or non-performance;

        c.      the preparation and filing of notices of default and/or notices of sale

        d.      the cancellation/rescission of notices of default and/or notices of sale;

        e.      the taking of a deed in lieu of foreclosure; and

        f.      the preparation and execution of such other documents and performance such other actions as may be necessary under the terms of the Mortgage, Deed of Trust or state law to expeditiously complete said transactions in paragraphs 8(a) through 8(e), above.

9.      To take possession of and endorse and collect any checks, drafts, notes, acceptances or other instruments for the payment of moneys due under any mortgage insurance or with respect to any Mortgage Note and to file any claim or to take any other action or proceeding in any court of law or equity or otherwise deemed appropriate by Owner for the purpose of collecting any and all such moneys due under any such mortgage insurance or with respect to any Mortgage Note, Mortgage or Deed of Trust whenever payable.

10.     To take all other necessary and appropriate actions in connection with the foregoing.

The undersigned gives said Owner as Attorney-in-Fact full power and authority to execute such instruments and to do and perform all and every act and thing necessary and proper to carry into effect the power or powers granted by or under this Limited Power of Attorney, as fully as the undersigned might or could do, and hereby does ratify and confirm to all that said Attorney-in-Fact shall lawfully do or cause to be done by authority hereof.  This Power of

Exhibit C-2

Attorney shall be effective as of December 9, 2015.  This Power of Attorney is a power coupled with an interest and shall be irrevocable.  Owner agrees not to exercise any of the powers granted hereunder unless an Event of Default exists under the Agreement.

IN WITNESS WHEREOF, W.J. Bradley Mortgage Capital, LLC, as Seller pursuant to that certain Participation Agreement, dated as of December 9, 2015, between Seller and the Owner has caused its corporate seal to be hereto affixed and these presents to be signed and acknowledged in its name and behalf by _____, its duly elected and authorized _____ this 8th day of December, 2015.

W.J. BRADLEY MORTGAGE CAPITAL, LLC


By:_____
Name:
Title:

Exhibit C-3

STATE OF _____
COUNTY OF _____

On _____ __, _____, before me, the undersigned, a Notary Public in and for said state, personally appeared _____ of _____, personally known to me to be the person whose name is subscribed to the within instrument and acknowledged to me that [she/he] executed that same in [her/his] authorized capacity, and that by [her/his] signature on the instrument the entity upon behalf of which the person acted and executed the instrument.

WITNESS my hand and official seal.

(SEAL)


Notary Public

Exhibit C-4