IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>W.J. BRADLEY MORTGAGE CAPITAL, LLC et al.,[1]<br><br>Debtors. | Case No. 16-11049 (KG)<br><br>Chapter 7<br><br>(Jointly Administered) |

## CHAPTER 7 TRUSTEE'S MOTION FOR ENTRY OF ORDER AUTHORIZING THE SALE OF REAL ESTATE LOCATED AT 1302 124TH AVENUE NE BLAINE MINNESOTA

George L. Miller, the chapter 7 trustee (the "Trustee") of the bankruptcy estates of the above-captioned debtors (the "Debtors"), by and through his undersigned counsel, hereby respectfully submits this Motion for Entry of Order Authorizing the Sale of Real Estate Located at 1302 124th Avenue NE Blaine, Minnesota (the "Motion"), and states as follows:

### JURISDICTION AND VENUE

1. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. The statutory predicates for the relief sough herein are sections 105(a), 363(b) and (f) of title 11 of the United States Code (the "Bankruptcy Code").

### BACKGROUND

3. On April 28, 2016 (the "Petition Date"), the Debtors each filed voluntary petitions under Chapter 7 of the Bankruptcy Code.

---

[1] The Debtors' last four digest of their respective tax identification numbers are: W.J. Bradley Company Merchant Partners 2003-Seed, LLC (4154); W.J. Bradley Mortgage Capital, LLC (0071); W.J. Bradley Corporate Services, LLC (7269); W.J. Financial Services, LLC (7292); WJB Mortgage Services, LLC (1514).

1

4. On April 28, 2016, George L. Miller was appointed the Chapter 7 Trustee of the estate of each of the Debtors.

5. The Debtors were in the business of originating and servicing residential real estate mortgage loans.

6. Prior to the Petition Date, the Debtors held a portfolio of mortgage loans in excess of $250 million. Prior to ceasing operations, the Debtors were licensed to operate in 45 states plus the District of Columbia and had physical branch locations in twelve states with approximately 500 employees.

7. In addition to servicing loans, the Debtors also owned and serviced seven loans belonging solely to WJ Bradley and their direct affiliates.

8. Of particular importance to this Motion, the Debtors owned and serviced a loan for that certain parcel of real property located at 1302 124th Avenue NE Blaine, MN, 55434 (the "Property").

9. On October 8, 2014, Mortgage Electronic Registration Systems, Inc. transferred unto Debtors a certain mortgage (the "Mortgage") dated June 11, 2013 made and executed by Kevin Przybylski ("Przybylski") in favor of Mortgage Electronic Registration Systems, Inc for the Property.

10. On October 30, 2014, after default, the Debtors began foreclosing on the Mortgage (the "Foreclosure Process").

11. On December 29, 2014, after proper notice, the Sheriff of the County of Anoka, State of Minnesota, sold the Property to the Debtors for the sum of $127,926.95.

12. Upon information and belief, Przybylski did not redeem or sell the home within the six month redemption period allocated under Minnesota law and title successfully transferred to WJ Bradley Mortgage Capital, LLC on December 30, 2014.

13. The Debtors continue to hold title and possession of the Property. Upon information and belief, the Property is vacant.

14. On May 1, 2017, the Trustee filed the Application to Employ/Retain ReMax as Real Estate Broker and Advisor (the "Application to Employ ReMax") [D.I. 236]. Specifically, the Trustee sought to retain ReMax to market and sell the Property and allow the parties to enter into a retention agreement (the "Retention Agreement").

15. Pursuant to that Retention Agreement, and as outlined in the Application to Employ ReMax, the Trustee agrees to pay ReMax $449.00 plus six percent (6%) of the selling price of the Property. The Trustee further agreed to reimburse ReMax for all expenses reasonably incurred in the marketing and sale of the Property.

16. On June 15, 2017, Ms. Jackie King fully executed a purchase agreement (the "Purchase Agreement") for the purchase of the Property. A true and accurate copy of the Purchase Agreement is attached hereto as Exhibit A.

17. Pursuant to that certain Purchase Agreement, Ms. King agrees to purchase the Property for the sum of $155,000.00 (the "Purchase Price") composed of cash in the amount of approximately $4,650 and financing the remaining balance through a conventional mortgage.

18. The Purchase Agreement is subject to a property inspection. Ms. King bears the cost of such inspection.

19. Sale of the Property is contingent upon approval of this Court.

20. In negotiating the sale, the Trustee agreed to provide $500 towards the Ms. King's closing costs. Further, the Trustee has agreed to pay for any and all delinquencies, late fees, and/or collection accounts in connection with the HOA accounts pertaining to the Property.

21. If the Motion is approved by this Court and the sale is confirmed, the sale of the Property will provide a benefit to the Debtors' estates of approximately $152,000.

## BASIS FOR RELIEF REQUESTED

### A. The Sale of the Property Represents an Exercise of the Trustee's Business Judgement

22. Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 363 of the Bankruptcy does not set forth specific standards for determining when it is appropriate for a court to authorize the sale or disposition of a debtor's assets. However, courts in this Circuit have required that the decision to sell assets outside the ordinary course of business be based upon the sound business judgment. In re Abbotts Dairies of Pennsylvania, Inc., 788 F. 2d 143 (3d Cir. 1986); see also Myers v. Martin (In re Martin), 91 F.3d 389, 295 (*3d Cir. 1996); Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F. 2d 1063, 1071 (2d. Cir. 1983); In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (D. Del. 1999).

23. The "sound business judgment" test requires the establishment of four elements in order to justify the sale or lease of property outside the ordinary course of business, namely, (a) that a "sounds business purpose" justifies the sale of assets outside the ordinary course of business, (b) that adequate and reasonable notice has been provided to interested persons, (c) that the debtors have obtained a fair and reasonable price, and (d) good faith. Abbotts Dairies, 788 F.2d 143; Titusville Country Club v. Pennbank (In re Titusville Country Club), 128 B.R.396, 399

4

(Bankr. W.D. Pa. 1991); In re Sovereign Estates, Ltd., 104 B.R. 702, 704 (Bankr. E.D. Pa. 1989). A debtor's showing of a sound business purpose need not be unduly exhaustive; rather, a debtor is "simply required to justify the proposed disposition with sound business reasons." In re Baldwin United Corp., 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984). Whether or not there are sufficient business reasons to justify a transaction depends upon the facts and circumstances of each case. Lionel, 722 F.2d at 1071; Montgomery Ward, 242 B.R. at 155 (approving funding of employee incentive and severance program; business purpose requirement fulfilled because stabilizing turnover rate and increasing morale were necessary to the success of the business).

24. Additionally, section 105(a) of the Bankruptcy Code provides a bankruptcy court with broad powers in the administration of a case under the Bankruptcy Code. Section 105(a) provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). Provided that a bankruptcy court does not employ its equitable powers to achieve a result not contemplated by the Bankruptcy Code, the exercise of its section 105(a) power is proper. Pincus v. Graduate Loan Ctr. (In re Pincus), 280 B.R. 303, 312 (Bankr. S.D.N.Y 2002). Pursuant to section 105(a), a court may fashion an order or decrees that helps preserve or protect the value of a debtor's assets. See e.g., Chinichian v. Campolongo (In re Chinichian), 784 F. 2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion as necessary pursuant to the purposes of the Bankruptcy Code."); In re Cooper Pros. Liquidating Trust, Inc., 61 B.R. 531, 537 (Bankr. W.D. Tenn. 1986) (noting that the bankruptcy court is "one of equity and as such it has a duty to protect whatever equities a debtor may have in property for the benefit of its creditors as long as that protection is implemented in a manner consistent with the bankruptcy laws").

25. There is ample business judgment for the approval of the sale of the Property. The Trustee believes that the sale of the Property will inure to the benefit of the Debtors' estates and creditors, and therefore, represents the exercise of the Trustee's sound business judgment. As identified above, since the Debtors no longer operate their business. There is a lack of any supervision of the vacant Property, and therefore an unnecessary and added risk and expense associated with maintaining the Property. Maximizing value now and reducing risk is therefore of most importance to the Debtors' estates.

26. The Trustee's proposed sale of the Property is in "good faith" within the meaning of the <u>Abbotts Dairies</u> analysis. The Trustee represents that no insider will gain an unfair advantage from the sale. Additionally, through the retention of ReMax, the Trustee is further shielded from any threat of bad faith actions in connection with the sale of the Property. Moreover, the Trustee will provide ample notice to any impacted parties.

27. Further, the Trustee does not believe that any other alternative will provide a higher value for the Property.

28. Ms. King's proposed Purchase Price, subject to the terms and conditions of the Purchase Agreement, represents a fair and reasonable purchase price for the Property.

**B.    The Sale of the Property Should be Approved under 11 U.S.C. § 363(f)**

29. Pursuant to section 363(f) of the Bankruptcy Code, a Trustee may sell all or any part of the Debtor's property free and clear of any and all liens, claims or interests in such property if (i) such a sale is permitted under applicable non-bankruptcy law, (ii) the party asserting such a lien, claim or interest consents to such sale, (iii) the interest is a lien and the purchase price for the property is greater than the aggregate amount of all liens on the property, (iv) the interest is the subject of a *bona fide* dispute, or (v) the party asserting the lien, claim or

interest could be compelled in a legal or equitable proceeding, to accept a money satisfaction for such interest. See 11 U.S.C. § 363(f); In re Elliot, 94 B.R. 343, 345 (E.D. Pa. 1988) (section 363(f) written in disjunctive; court may approve sale "free and clear" provided at least one of the subsections is met).

30. The Trustee submits that the sale of the Property satisfies the requirements of section 363(f) of the Bankruptcy Code. The Trustee performed a title search for the Property revealing only one lien; a $48.00 lien held by Heatherwood Townhomes Homeowners' Association. The Trustee submits that the lien, and fees associated therewith, will be satisfied prior to closing.

31. Accordingly, the requirements of 363(f) of the Bankruptcy Code are met, and the proposed disposition of the Property should be approved "free and clear" of any such liens, claims or interests, with any such liens to attach to the proceeds of the sale.

## CONCLUSION

32. For the reasons set forth above the Trustee seeks authorization, pursuant to sections 105(a), 363(b) and 363(f) of the Bankruptcy Code to sell the Property.

## NOTICE

33. Notice of this Motion has been given to: (a) the Office of the United States Trustee; (b) Debtors' counsel; and (c) all parties that have previously requested notice in this case pursuant to Bankruptcy Rule 2002. Such notice is reasonable in light of the circumstances of this case and nature of the relief sought herein.

WHEREFORE, the Chapter 7 Trustee respectfully requests that this Court enter an order granting the relief requested herein, substantially in the form attached hereto as Exhibit B, and granting such other and further relief as the Court deems just and proper.

Dated: June 21, 2017                GELLERT SCALI BUSENKELL & BROWN LLC

                                                By:    */s/ Ronald S. Gellert*
                                                          Ronald S. Gellert (DE 4259)
                                                          1201 N. Orange Street, 3rd Floor
                                                          Wilmington, DE 19801
                                                          P:   302-425-5806
                                                          F:   302-425-5814
                                                          rgellert@gsbblaw.com

                                                          *Counsel to Chapter 7 Trustee George Miller*